**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

|  |  |
|---|---|
| HADRON INDUSTRIES, INC. *et al.*, <br><br> Plaintiffs, <br><br> - vs - <br><br> TRIANGLE EXPERIENCE GROUP, INC., *et al.*, <br><br> Defendants. | Civil Action No.: <br> 1:19-cv-00035-LO-MSN |

**ALQIMI ANALYTICS & INTELLIGENCE, LLC'S MEMORANDUM IN SUPPORT
OF ITS MOTION FOR SUMMARY JUDGMENT ON COUNTS ONE, TWO, THREE,
FOUR AND FIVE OF PLAINTIFFS' AMENDED COMPLAINT**

Leslie Paul Machado (VSB No. 94124)
O'HAGAN MEYER, PLLC
2560 Huntington Avenue, Suite 204
Alexandria, Virginia 22303
(703) 775-8607 Telephone
(804) 403-7110 Facsimile
LMachado@ohaganmeyer.com

Charles M. Sims (VSB No. 35845)
Rachel L. Loughlin (VSB No. 84133)
O'HAGAN MEYER, PLLC
411 East Franklin Street, Suite 500
Richmond, Virginia 23219
(804) 403-7100 Telephone
(804) 403-7110 Facsimile
CSims@ohaganmeyer.com
RLoughlin@ohaganmeyer.com

*Counsel for ALQIMI Analytics &
Intelligence, LLC*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................... ii

INTRODUCTION ........................................................................................1

LIST OF UNDISPUTED MATERIAL FACTS ........................................... 2

STANDARD ............................................................................................... 11

ARGUMENT ............................................................................................. 12

I.     Hadron Cannot Establish the Elements of its Claims Against AAI under the
Lanham Act for Reverse Passing-Off and False Advertising ...........................................12

     A.     AAI is Entitled to Summary Judgment on Hadron's Reverse
Passing-Off Claim ............................................................... 13

          1.     AAI Made No Misrepresentations in Its Responses to the
ACES-OE SOW ..................................................... 13

          2.     Hadron Cannot Prove That AAI's Responses Were Likely to Cause
Confusion ................................................................15

          3.     Hadron's Demonstrations and the TEG Monthly Reports Are Not
Actionable Under the Lanham Act .........................................16

     B.     AAI is Entitled to Summary Judgment on Hadron's False Advertising Claim.....18

II.     AAI is Entitled to Summary Judgment on the Tortious Interference with Business
Relations and Prospective Advantage Claim (Count II) ....................................19

     A.     Hadron's Tortious Interference Claim is Barred by the Statute of
Limitations .............................................................................19

     B.     Hadron Has No Evidence That AAI had Improper Motive or Used Means
in Obtaining the ACES-OE SOW .................................................21

III.     AAI is Entitled to Summary Judgment on Hadron's Conspiracy Claim (Count V) .........22

     A.     Hadron's Conspiracy Claim is Barred by the Statute of Limitations ..................22

     B.     Hadron Has No Evidence of a Conspiracy .........................................23

IV.     AAI is Entitled to Summary Judgment on Hadron's Chapter 93A Claim
against AAI .............................................................................24

i

A.     Massachusetts Law Does Not Apply to This Claim .............................................25

B.     The Allegedly Unfair and Deceptive Conduct Did Not Occur "primarily and substantially" in Massachusetts .....................................27

C.     The Undisputed Facts Establish AAI Did Not Engage in Unfair Competition or Deceptive Act or Practice ..............................................28

CONCLUSION....................................................................................................................29

CERTIFICATE OF SERVICE ...........................................................................................31

# TABLE OF AUTHORITIES

**Cases**                                                                      **Page(s)**

*Abdallah v. Bain Capital, LLC*,
    880 F. Supp. 2d 190 (D. Mass. 2012) .............................................................. 21, 23

*Aetna Cas. Sur. Co. v. P&B Autobody*,
    43 F.3d 1546 (1st Cir. 1994) .............................................................................. 23

*Belmora LLC v. Bayer Consumer Care AG*,
    819 F.3d 697 (4th Cir. 2016) ......................................................................... 13, 17

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ......................................................................................... 11

*Corinthian Mortgage Corp. v. Choicepoint Precision Marketing, LLC*,
    543 F. Supp. 2d 497 (E.D. Va. 2008) ................................................................ 27

*Evans v. PlusOne Sports, LLC*,
    686 F. App'x. 198 (4th Cir. 2017) ..................................................................... 28

*George & Co., LLC v. Imagination Entertainment Ltd.*,
    575 F.3d 383 (4th Cir. 2009) ............................................................................ 15

*Glines v. Bruk*,
    664 A.2d 79 (W.H. 1995) ................................................................................ 20

*Gooding-Williams v. Fairfax County School Bd.*,
    2019 WL 3268831 (E.D. Va. July 19, 2019) ..................................................... 11

*Hamann v. Carpenter*,
    937 F.3d 86 (1st Cir. 2019) ......................................................................... 21, 22

*Harrington v. Costello*,
    7 N.E.3d 449 (Mass. 2014) .............................................................................. 20

*Hipsaver Co., Inc. v. J.T. Posey Co.*,
    490 F. Supp. 2d 55 (D. Mass. 2007) ................................................................. 27

*In re Fresenius Granuflo/NaturalLyte Dialysate Products Liability Lit.*,
    76 F. Supp. 3d 294 (D. Mass. 2015) ................................................................. 19

*In re GlassHouse Technologies, Inc.*,
    604 B.R. 600 (D. Mass. 2019) .......................................................................... 25

*Jones v. Western Tidewater Regional Jail,*
   187 F. Supp. 3d 648 (E.D. Va. 2016) .................................................................. 11

*Jay Edwards, Inc. v. Baker,*
   534 S.2d 206 (N.H. 1987).................................................................................... 23

*Knox for Knox v. Vanguard Group, Inc.,*
   2018 WL 315157 (D. Mass. Jan. 5, 2018) ........................................................ 26

*Kratos Def. Eng'g Solutions, Inc. v. NES Assocs., LLC,*
   2011 WL 13248293 (E.D. Va. March 23, 2011) ............................................... 18

*Kurker v. Hill,*
   689 N.E.2d 833 (Mass. App. 1998) ................................................................... 24

*Kusek v. Family Circle, Inc.,*
   894 F. Supp. 522 (D. Mass. 1995) ..................................................................... 20

*Kyte v. Philip Morris Inc.,*
   556 N.E.2d 1025 (Mass. 1990)..................................................................... 23, 24

*L-3 Communications Corp. v. Serco, Inc.,*
   926 F.3d 85 (4th Cir. 2019) ............................................................................... 23

*Lott v. Scottsdale Ins. Co.,*
   827 F. Supp. 2d 626 (E.D. Va. 2011) ................................................................ 12

*Malden Transp., Inc. v. Uber Technologies, Inc.,*
   286 F. Supp. 3d 264 (D. Mass. 2017) ................................................................ 29

*Manning v. Zuckerman,*
   444 N.E.2d 1262 (Mass. 1983) .......................................................................... 25

*Massachusetts Eye and Ear Infirmary v. QLT Phototherapeutics, Inc.,*
   552 F.3d 47 (1st Cir. 2009) ................................................................................ 29

*National Federation of the Blinds, Inc. v. Loompanics Enter., Inc.,*
   936 F. Supp. 1232 (D. Md. 1996) ..................................................................... 14

*Nierman v. Hyatt Corp.,*
   808 N.E.2d 290 (Mass. 2004) ...................................................................... 19, 20

*Pagliuca v. Boston,*
   35 Mass. App. Ct. 820 (1994) ........................................................................... 22

*Paradigm BioDevices, Inc. v. Viscogliosi Bros., LLC*,
    842 F. Supp. 2d 661 (S.D.N.Y. 2012) ................................................................ 24

*Pembroke Country Club, Inc. v. Regency Savings Bank, F.S.B.*,
    815 N.E.2d 241 (Mass. Ct. App. 2004) ............................................................ 28

*Perini v. Perini Constr., Inc.*,
    915 F.2d 121 (4th Cir. 1990) ............................................................................ 16

*RSR Art, LLC v. Bob Ross, Inc.*,
    380 F. Supp. 3d 510 (E.D. Va. 2019) ................................................................ 12

*River Farm Realty Trust v. Farm Family Cas. Ins. Co.*,
    360 F. Supp. 3d 31 (D. Mass. 2019) ................................................................ 29

*Sara Lee Corp. v. Kayser-Roth Corp.*,
    81 F.3d 455 (4th Cir. 1996) .............................................................................. 16

*Scotts Co. v. United Indus. Corp.*,
    315 F.3d 264 (4th Cir. 2002) ........................................................................... 18

*Sheeler v. Select Energy and NEChoice, LLC*,
    2003 WL 21735496 (D. N.H. July 28, 2003) ................................................... 20

*Spring Investor Services, Inc. v. Carrington Capital Mgt.*,
    2013 WL 1703890 (D. Mass. April 18, 2013) .................................................. 27

*Taylor v. Am. Chemistry Council*,
    576 F.3d 16 (1st Cir. 2009) ......................................................................... 23, 24

*Tomasella v Nestlé USA, Inc.*,
    364 F. Supp. 3d 26 (D. Mass. 2019) ................................................................ 28

*Universal Furniture Intern, Inc. v. Collezione Europa USA, Inc.*,
    618 F.3d 417 (4th Cir. 2010) ........................................................................... 15

*Valador, Inc. v. HTC Corp.*,
    241 F. Supp. 3d 650 (E.D. Va. 2017) .......................................................... 15, 16

*Yancey v. Int'l Fid. Ins. Co.*,
    2016 WL 2997375 (E.D. Va. May 25, 2016) .................................................... 19

**Other**

Fed. R. Civ. P. 56(c) ................................................................................................. 11

15 U.S.C. § 1125(a)(1) ....................................................................................... 12

15 U.S.C. § 1125(a)(1)(B) ................................................................................. 18

Va. Code § 8.01-243(A) ..................................................................................... 20

*McCarthy on Trademarks and Unfair Competition* § 23:3 (5th ed.) ........................................... 15

G.L. c.260, § 2A .............................................................................................. 23

## INTRODUCTION

This case concerns a disgruntled participant in the free market system – Hadron Industries, Inc. ("Hadron") – that has turned to the courts to remedy the fact that it failed to obtain a contract from the government that it believed should have been awarded to it, but was not. Rather than protest the Government's actions, Hadron sat on its hands for years and then trumped up claims against Alqimi Analytics & Intelligence, LLC ("AAI").

The claims asserted by Hadron against AAI all flow from its assertion that AAI submitted a response to a Government task order Statement of Work ("SOW") that "misrepresented that it would be working in conjunction with Hadron to deliver the Government's requirements" and misrepresented "that AAI would be using Hadron's proprietary software and relying on Hadron for technical performance." ECF No. 59 at ¶¶ 44, 50. In short, Hadron argues that AAI effectively stole a government contract that Hadron believed it should have been awarded by improperly trading off Hadron's technology, expertise, and experience to unfairly secure the government contract for itself. *Id.* at ¶ 111(d).

These allegations were false when made and have proven to be false through discovery. AAI's responses to the SOW *did not* represent that AAI would be working with Hadron and *did not* represent that AAI would be using Hadron's proprietary software. Instead, AAI's responses made to the prime contractor, and the prime contractor's response to the Government, stated that AAI would be working with different vendors (other than Hadron), to integrate and test technologies (other than those offered by Hadron), to create an advanced collaborative enterprise services operating environment for a sophisticated government purchaser, the United States Air Force Intelligence, Surveillance and Reconnaissance Interoperability Office.  This sophisticated user issued separate contracts to Hadron and AAI (through a contract manager), understood the

experiences and capabilities of Hadron and AAI, and it knew the differences between the goods and services provided by those companies.  There was no misrepresentation to the Government or confusion by the Government.   The sophisticated government purchaser chose AAI for one contract to deliver a set of services and goods to compare with those provided by Hadron under a separate contract awarded by the Government.

The undisputed facts establish that Hadron's claims for alleged reverse passing-off and false advertising under the Lanham Act  (Counts 2-3), fail because AAI did not falsely designate the origin of its work or misrepresent the nature, characteristics, qualities or geographic origin of Hadron's goods, services, or commercial activities in a commercial advertising or promotion. And, in any event, there is no evidence the sophisticated government customer was deceived or confused.

Hadron's tortious interference and conspiracy claims (Counts 4-5), fail because they are barred by the statute of limitations and Hadron cannot prove that AAI had an improper motive or used improper means to secure the Government's award of the contract at issue, or that AAI engaged in a conspiracy with another to commit a tort against Hadron.

Finally, this Court should grant AAI summary judgment on the Hadron's claim for violation of Chapter 93A of the Massachusetts General Laws (Count I) because (1) Massachusetts substantive law does not apply to this cause of action; (2) the alleged conduct giving rise to the claim did not occur primarily and substantially in Massachusetts, as required for a viable claim; and (3) AAI's conduct was not unlawful or deceptive and thus did not violate Chapter 93A.

## LIST OF UNDISPUTED MATERIAL FACTS

1.      In 1998, Walter Greenberg ("Greenberg"), a resident of Georgia, formed Global Technology Solutions ("GTS"), which developed and marketed the "Social Intelligence Fusion

Toolkit" or SIFT.  Exhibit 1 (Greenberg Dep.) at 7:13-20; 11:18-12:3; 14:8-16. SIFT allows users to mine and analyze social media.  Exh. 1 at 16:5-16.

2.     In 2012, Greenberg met Rob Clare ("Clare"), who was an owner of Triangle Experience Group, Inc. ("TEG"). Exh. 1 at 31:4-24; Exhibit 2 (Clare Dep.) at 44:17-21. They decided to work collaboratively to develop business for their companies, including pursuit of business from the United States Air Force Intelligence, Surveillance and Reconnaissance Interoperability Office ("AF/A2I" or "A2I").  Exh. 1 at 31:4-24; 34:2-11; Exh. 2 at 44:17-21.

3.     In 2012, Col. James Mattey who was the Chief of Dynamic Mission Operations at the A2I office (Exhibit 3 (Mattey Dep.) at 18:4-7), sought the development of technology that allowed for the visualization and manipulation of data across multiple workspaces for military applications.  Exh. 3 at 20:17-23:8. This concept became known as the Advanced Collaborative Enterprise Services or ACES.  Exh. 3 at 18:15-19:3.

4.     As described by Col. Mattey, "ACES describes a set of capabilities that allows us to bring different information from different censors, different networks … as a team, [and] manage that information, look at it, and then send it" to other computer devices.  Exh. 3 at 18:15-24.

5.     The initial foundation technology for ACES was a Mezzanine product developed by Oblong Technologies.  Exh. 3 at 20:21-24. Mezzanine provided users with a collaborative operating environment that included monitors that accepted gestural (i.e., hand movement) controls to allow users to move data and applications across multiple monitors, which could be shown in multiple locations.  Exh. 1 at 55:8-18.

6.     After meeting Col. Mattey at a symposium, Clare began providing solution architect services to the A2I office.  Exh. 2 at 139:10-140:17.

7.      In late 2013 or early January 2014, Clare introduced Col. Mattey to Klee Dienes ("Dienes"), who owned Hadron.  Exh. 3 at 48:23-49:4; Exhibit 4 (Dienes Dep.) at 117:25-118:2.

8.      Hadron was developing products to be used in spatial computing applications including Photon™, which it described as a "collection of technologies that supports efficient sharing of applications and displays between any number of people across system boundaries and potentially disadvantaged links" and Praxis™, which is described as a "collection of technologies that supports 3-D, often 6-axis, spatial interaction between humans and computers and their environment."  Exhibit 5 (Hadron 30(b)(6) Dep.) at 85:19-24; 90:9-14.

9.      Hadron is incorporated in the State of New Hampshire, and during the period 2011 through 2018, Hadron's principal office was located in New Hampshire.  Exh. 4 at 76:1-3; 91:10-19; 93:9-94:3; 95:24-96:24; 97:18-98:23; 99:1-100:21; 102:13-103:13; 105:25-106:16; 110:7-20. Hadron did not register to do business in Massachusetts until April 2018 and, when it first registered to do business in Massachusetts, it continued to list the location of its "principal office" in New Hampshire.  Exh. 4 at 108:22-109:25; 110:21-111:20.

10.     In January 2014, Global Technology Solutions and ALQIMI Technology Solutions, Inc. formed a joint venture that ultimately became AAI.  Exh. 1 at 15:17-16:25; Exhibit 6 (Carlin Dep.) at 44:20-46:12. AAI was formed as a Delaware company with its principal office located in Rockville, Maryland. ECF 59, ¶ 7.

**Boston Meeting and Aftermath**

11.     In February 2014, Col. Mattey traveled to Boston for a meeting at Oblong Technologies to see how Mezzanine works in different environments.  Exh. 3 at 65:25-67:8.

12.     Prior to the Boston trip, Clare introduced Greenberg to Dienes via email message. Exhibit 7 (AAI Exhibit 12). Greenberg understood Clare made the introduction because both

Dienes and Greenberg were attempting to support ACES, and Clare wanted to see if there was any "common ground" between them.  Exh. 1 at 76:21-77:9.

### ACES-OE Proposal

13.     After the Boston meeting, Dienes approached the A2I office about having Hadron provide a "standalone ACES analytical environment that would combine Hadron's collaboration technology with data from Twitter and other sources with tools from a multitude of government open-source and I think later commercial vendors."  Exh. 4 at 160:19-162:14. He proposed to provide Hadron's products and services to A2I through a Phase III SBIR contract to be awarded by A2I to Hadron.  Exh. 4  at 162:15-164:20.

14.     In furtherance of these efforts, Hadron submitted a draft statement of work that included delivery of a prototype spatial computing system that would utilize Praxis™ and Photon™ software.  Exh. 4 at  181:17-22.

15.     Greenberg also submitted a draft of a statement of work to A2I that included integration of SIFT technology.  Exh. 1 at 91:24-92:19.

16.     In March 2014, Col. Robert Herslow took over Col. Matty's responsibility for ACES at the A2I office located at the Pentagon.  Exh. 3 at 149:7-18.  Exhibit 8 (Herslow Dep.) at 17:6-21.

### A2I's May 20, 2014 Statement of Work

17.     A2I issued a Task Order Statement of Work for Advanced Collaborative Enterprise Service (ACES) Operating Environment (ACES-OE) on 20 May 2014 (the "ACES-OE SOW"). Col. Herslow prepared the ACES-OE SOW with the others in the A2I office. Exh. 8 at 121:21-122:1. Clare and Greenberg, along with others, assisted in the development of the ACES-OE SOW. Exh. 8 at 122:2-7; 55:8-17.

18.     Col. Herslow testified that the purpose of the ACES-OE SOW "was to deliver SIFT, which was a social media tool to help with open-source intelligence to look at a variety of other tools." Exh. 8 at 53:12-20.

19.     A2I issued the ACES-OE SOW through Par Government Systems Corporation ("ParGov"), which had its headquarters in New York and which was the contract manager for A2I contracts. Exh. 3 at 47:6-9. Clare did not provide input or advice to the A2I office or to Col. Herslow in making the decision to award the ACES-OE SOW to ParGov/AAI. Exh. 8 at 134:6-14. He made no recommendations and only answered Col. Herslow's questions. Exh. 8 at 134:11-14.

20.     Col. Herslow explained that the ACES-OE SOW was awarded through ParGov because "it was added to an existing IDIQ [indefinite delivery, indefinite quantity] of which ParGov had several different task orders and a very good working relationship with" the A2I office. Exh. 8 at 134:19-24.

21.     On May 23, 2014, ParGov asked AAI to respond to the ACES-OE SOW. Exhibit 9 ParGov 0752-0753. Greenberg, on behalf of AAI, interviewed several potential subcontractors for possible inclusion on the AAI team, including Hadron. Exh. 1 at 130:2-22; Exh. 8 at 74:13-75:5. After interviewing Dienes, Greenberg decided to not include Hadron as part of the team responding to the ACES-OE SOW. Exh. 1 at 131:25-132:4.

22.     In preparing several responses to ACES-OE SOW at the request of ParGov, AAI first quoted the ACES-OE SOW and then provided AAI's response. Exhibit 10 (AAI Depos. Exhibit 18) at 2 ("Each section of the SOW is quoted with our response following").

23.     For example, with respect to the delivery of the spatial computing system, AAI quoted the ACES-OE SOW, which stated that the system would include "all required Praxis™ and

Photon™ software required to support several representative applications. . ." Exh. 10 at 5. Then, below that, AAI stated for its response to the SOW's requirements that AAI "will install and validate Oblong's Mezzanine inforpresence™ environment" and that it "will install and validate MCT's Sluce environment which operates on the same platform as Mezzanine, but has built-in development, data acquisition, and dissemination capabilities." Exh. 10 at 5-6.

24.     AAI's draft response provided to ParGov made clear that it was proposing to use Oblong's Mezzanine and Sluce products and made no representation that it would use Praxis™ and Photon™ software to provide an ACES-OE system. *Id.*

25.     AAI's draft response to the SOW provided to ParGov also explained that, with the exception of SIFT, AAI would provide system integration services under the contract, thereby integrating products and services provided by other vendors and subcontractors, and in so doing, would rely upon Oblong, Mission Control Technologies, Inc. ("MCT"), TEG, CISCO Systems, Inc. ("CISCO"), Janus Research, and General Dynamics Information Technology, Inc. ("GDIT"), as subcontractors to deliver the various products and services. Exhibit 11 - AAI Dep. Exhibit 21.

26.     AAI did not represent in its draft responses to the ACES-OE SOW provided to ParGov that it would be working with Hadron to deliver the requirements of the SOW, nor did it represent that it would be utilizing Praxis™ and Photon™ software. Exh. 4 at 199:1-7; 203:15-25; 234:15-235:5; 235:21-24.

27.     ParGov incorporated AAI's response into its formal response to the ACES-OE SOW, which it submitted to the U.S. Army Contracting Command on June 27, 2014 (the "ParGov Response"). Exhibit 12 - ParGov1041-1064.

28.     With respect to the ACES-OE System Delivery, the ParGov Response stated:

> PAR-ALQIMI will design, deliver install, and customize a single ACES-OE prototype for both R&D and operational use at A2I.

> PAR-ALQIMI will coordinate and work with Oblong Industries, Inc., Mission Control Technologies, Inc. (MCT), Triangle Experience Group, Inc. (TEG) and Cisco Systems, Inc. on this task. This system will include a 6-axis, gestural tracking system, a virtual workspace consisting of 55" monitors, integrated whiteboard and software required to support several representative applications.
>
> To provide a single ACES-OE prototype for operational use that will include 6-axis, gestural tracking system, PAR-ALQIMI will install and validate Oblong Industries' Mezzanine Infopresence™ environment.  Oblong's Mezzanine provides an effective way to simultaneously engage multiple users and their data, exactly what traditional conference and telepresence rooms lack.

Exh. 12 at § 3.2.3.

29.     On July 1, 2014, Hadron learned that A2I had selected the ParGov/AAI team for the ACES-OE SOW contract.  Exh. 5 at 32:14-23.

30.     The ACES-OE SOW task order was accepted by AAI on August 1, 2014.  Exh. 1 at 60:18-24.

31.     Col. Herslow understood that the ParGov/AAI ACES-OE contract included delivering and testing Oblong's Mezzanine technology in the field.  Exh. 8 at 76:12-16. Col. Herslow believed Mezzanine was a "promising technology" that A2I "needed to look at."  Exh. 8 at 103:18-104:19.  One goal of the A2I office was to be able to compare and contrast both technologies, Mezzanine and Photon™, in the field.  Exh. 8 at 76:22-25.

32.     On or about September 24, 2014, Hadron received a copy of the government's May 20, 2014 ACES-OE SOW as well as ParGov's response.  Exh. 5 at 139:25-144:16. Upon receipt of that information, Hadron "became gravely concerned that in some way the government had been misled."  Exh. 5 at 150:15-22.

33.     Hadron did not complain to Col Herslow that AAI had obtained the ACES-OE SOW contract through fraud.  Exh. 5 at 199:1-4.

**A2I awards multiple ACES related contracts to Hadron**

34.     On July 30, 2014, the A2I office awarded Hadron a Phase III SBIR contract to, among other things, deliver and install a Praxis™-based six-axis gestural control system, a six-display immersive video environment, and a Photon™-based window control system in a facility that could be easily accessed by government personnel.  Exh. 5 at 41:21-42:12; 67:15-68:2. Hadron received approximately $2.1 million under its Phase III SBIR contract.  Exh. 5 at 43:1-12; 44:1-4. Hadron developed and delivered an ACES operating environment that included Photon™ at a separate facility then the AAI lab.  Exh. 8 at 160:16-24.  Col. Herslow directed Hadron's activities under the SIBR III Contract.  Exh. 5 at 64:25-66:12.

35.     On September 30, 2014, the A2I office awarded Hadron another contract, called the ACES-TS contract, in which Hadron was to support the deployment of and development of ACES systems.  Exh. 4 at 187:10-25; Exh. 5 at 175:5-15.

**Demonstrations**

36.     Following award of its ACES-OE SOW contract, AAI leased a suite in Rosslyn, Virginia for the purpose of  hosting government meetings in a secure environment, maintaining a server with its products, and demonstrating the ACES-OE prototype utilizing Oblong Industries' Mezzanine Infopresence™ technology.  Exh. 1 at 136:5-18.

37.     Clare asked AAI to allow Hadron, which was performing under the Phase III SBIR contract, to temporarily set up its equipment in the same AAI lab.  Exh. 1 at 137:9-138:3.  AAI allowed Hadron to use a portion of the AAI lab.  Exh. 1 at 138:5-11.

38.     During the fall of 2014, both Hadron and AAI demonstrated technology at the AAI lab.  Exh. 1 at 137:9-13.

39.     On three occasions in the fall of 2014, Greenberg, on behalf of AAI, demonstrated SIFT technology using Hadron's monitors installed at the AAI lab.  Exh. 5 at 115:18-119:3. Hadron did not object to AAI using Hadron's monitors during AAI's demonstration of the SIFT technology.  Exh. 5 at 119:4-7.

40.     Neither Greenberg nor any other AAI employee demonstrated the Photon™ or Praxis™ technology to the Government.  Exh. 5 at 119:8-14; 120:3-15; 207:20-208:3.

41.     AAI did not demonstrate Hadron's goods, services, or commercial activities to the Government.  Exh. 5 at 207:20-208:3.

42.     Col. Herslow directed TEG, as part of its performance as a subcontractor to AAI under the ParGov/AAI contract, to assist Hadron with its effort under the Phase III SBIR contract. Exh. 8 at 78:9-17.

43.     After July 2014, Col. Herslow knew that TEG was supporting AAI's effort under the ACES-OE SOW and that TEG was supporting Hadron with its efforts under the Phase III SIBR contract.  Exh. 8 at 77:17-78:1.

44.     TEG's monthly activity reports included activities it was supporting under the ACES-OE SOW contract, as well activities it was supporting in furtherance of Hadron's work under its Phase III SBIR contract.  Exh. 2 at 281:20-282:4.

45.     Col. Herslow understood that, when TEG submitted reports about its efforts, those reports included TEG's efforts in support of both the ParGov/AAI contract and Hadron's Phase III SBIR contract.  Exh. 8 at 78:18-24.

46.     The ACES-OE SOW contract, and AAI's work under the ACES-OE SOW contract ended in July 2015.  Exhibit 13 (Carlin Declaration) at ‖ 16.

47.     AAI delivered an ACES operating system that used the Oblong Mezzanine system and not Photon™ under the ACES-OE SOW.  Exh. 8 at  76:12-16; 162:9-20; 76:12-16 ("The Oblong Mezzanine system was delivered and it was part of this [ACES-OE SOW] contract.").

48.     After the ACES-OE SOW contract ended in July 2015, AAI did not obtain, or perform, any work with or for the A2I office.  Exh. 13 at ℙ 17.

49.     Col. Herslow understood that Hadron delivered and ACES system employing Photon™ software at a separate office from the AAI lab.  Exh. 8 at 160:16-24.

## STANDARD

A court may appropriately end litigation under Fed. R. Civ. P. 56(c) where it is established after "viewing the facts in the light most favorable to the non-moving party, there remains no genuine issue of material fact and the movant is entitled to judgment as a matter of law." *Gooding-Williams v. Fairfax County School Bd.*, No. 1:18-cv-01177, 2019 WL 3268831, at *4 (E.D. Va. July 19, 2019) (O'Grady, J.) (citations omitted). "The moving party has the initial burden to show the absence of an essential element of the nonmoving party's case and to demonstrate that the moving party is entitled to judgment as a matter of law." *Jones v. Western Tidewater Regional Jail,* 187 F. Supp. 3d 648, 652 (E.D.Va. 2016).  The "burden on the moving party may be discharged by showing . . . that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986) (internal quotation marks omitted).

When the defendant has met its burden to show that the evidence is insufficient to support the plaintiff's case, the plaintiff "must respond with specific facts, supported by proper documentary evidence, showing that a genuine dispute of material fact exists, and that summary judgment should not be granted in favor of the moving party."  *Gooding-Williams*, 2019 WL 3268831, at *4 (citation omitted). The "party with the burden of proof on an issue must adduce

"evidence that would be sufficient, if believed, to carry the burden of proof on that issue at trial" in order to prevail at summary judgment. *Lott v. Scottsdale Ins. Co.*, 827 F. Supp. 2d 626, 629 (E.D. Va. 2011) (citation omitted). "Conclusory assertions of state of mind or motivation are insufficient to defeat summary judgment." *RSR Art, LLC v. Bob Ross, Inc.*, 380 F. Supp. 3d 510, 514 (E.D. Va. 2019) (O'Grady, J.) (citation omitted).

## ARGUMENT

**I.  Hadron Cannot Establish the Elements of its Claims Against AAI under the Lanham Act for Reverse Passing-Off and False Advertising**

Hadron asserts two claims against AAI arising out of Section 43(a)(1) of the Lanham Act, 15 U.S.C. § 1125(a)(1). One is for false designation of origin under § 43(a)(1)(A), which Hadron frames as a reverse passing-off claim, and the other is for alleged false advertising in violation of § 43(a)(1)(B). Both claims arise from Hadron's allegation that AAI falsely claimed or misrepresented Hadron's goods, services, or commercial activities as its own when responding to the ACES-OE SOW, and that it did so again in providing demonstrations and monthly reports to the Government during performance of the ACES-OE SOW contract. ECF No. 59 at ¶¶ 122-140.

The claim for reverse passing off (Count III) fails as a matter of law because the undisputed facts establish that AAI did not misrepresent the origin of Hadron's goods, services, or commercial activities as its own, and moreover, Hadron fails to prove that any customer of its services was likely to be confused by AAI's actions.

Hadron's claim for false advertising (Count IV) also fails because it fails to prove that AAI misrepresented the "nature, characteristics, qualities, or geographic origin" of its or Hadron's good

or services when it submitted responses to the ACES-OE SOW to ParGov, and it fails to prove a substantial likelihood of confusion from those responses.[1]

A. **AAI is Entitled to Summary Judgment on Hadron's Reverse Passing-Off Claim**

"Reverse passing-off occurs when a 'producer misrepresents someone else's goods or services as his own,' in other words, when the defendant is selling the plaintiff's goods and passing them off as originating with the defendant.'" *Belmora LLC v. Bayer Consumer Care AG*, 819 F.3d 697, 710 n.7 (4th Cir. 2016) (citations omitted). To prove its claim of reverse-passing off against AAI, Hadron must prove: "'(1) that the work at issue originated with the plaintiff; (2) that origin of the work was falsely designated by the defendant; (3) that the false designation of origin was likely to cause consumer confusion; and (4) that the plaintiff was harmed by the defendant's false designation of origin.'" *Id.* at 710 (citation omitted). Hadron has no evidence to support its burden to prove the essential elements of its claim.

1. **AAI Made No Misrepresentations in Its Responses to the ACES-OE SOW**

The gravamen of Hadron's Lanham Act claim is that, in its responses to the ACES-OE SOW, AAI misrepresented that it would be working with Hadron and that it would be providing Hadron's Photon™ and Praxis™ technologies to the government. ECF No. 59 at ¶ 124.  A plain reading of AAI's responses to ParGov, however, as well as ParGov's response to the ACES-OE SOW refutes any notion that AAI falsely represented to anyone that Hadron's products or services were its own, much less that AAI was passing-off Hadron's goods or services to the government

---

[1]   The submissions of responses to the ACES-OE SOW do not constitute "commercial advertising or promotion," and therefore are not actionable under § 43(a)(1)(B) of the Lanham Act.

as originating with AAI. Hadron, through its corporate designee, admits as much. *See* List of Undisputed Material Facts ("LUMF") ⁋ 26.

AAI's responses to the ACES-OE SOW stated that it would "provide a single ACES-OE prototype for operational use that will include a 6-axis, gestural tracking system" by "install[ing] and validat[ing] *MCT's Sluce* environment which operates on the same platform as *Mezzanine*, but has built-in development, data acquisition, and dissemination capabilities." LUMF ⁋ 23 (emphasis added). AAI's responses also made clear that AAI would be providing the integration services, along with other subcontractors such as TEG, that have no affiliation with Hadron, and that it would be integrating software products from vendors other than Hadron. *Id.* at ⁋ 25. AAI's responses did not represent that it would utilize Praxis™ or Photon™ technology. *Id.* at ⁋ 24.

Hadron claims, however, that in AAI's draft responses to ParGov, AAI quoted from the ACES-OE SOW, which contemplated the use of Praxis™ and Photon™ technologies in the ACES operating environment. ECF No. 59 at ⁋ 124. But a plain reading of the AAI responses reveals that AAI's purpose for including the language from the ACES-OE SOW in its response was merely to identify what subject area AAI's response applied. LUMF ⁋⁋ 22-23. "When a referential use of another's mark is made, courts have observed that the context of the use is important in evaluating the likelihood of confusion as to endorsement." *National Federation of the Blinds, Inc. v. Loompanics Enter., Inc.*, 936 F. Supp. 1232, 1242 (D. Md. 1996). That context establishes, as a matter of law, that AAI did not misrepresent the origin of the goods or services it was proposing to provide if awarded the subcontract for the ACES-OE SOW.[2]

---

[2]      Moreover, even if the ultimate ACES-OE contract could be read to require the delivery of an ACES operating environment utilizing Praxis and Photon, there is no confusion as to who manufactures those software products. There is no allegation or suggestion that AAI took the labels off Praxis and Photon and sold those software products under AAI's label.

### 2. Hadron Cannot Prove That AAI's Responses Were Likely to Cause Confusion

AAI is also entitled to summary judgment because no reasonable jury could find a likelihood of confusion based on the plain language of AAI's draft responses to the ACES-OE SOW. *Valador, Inc. v. HTC Corp.*, 241 F. Supp. 3d 650, 660 (E.D. Va. 2017) (granting summary judgment where record evidenced no confusion).

"'While there is no bright line test to determine the existence of a likelihood of consumer confusion, recovery under the Lanham Act requires, at a minimum, that confusion, mistake, or deception be likely, not merely possible.'" *Universal Furniture Intern, Inc. v. Collezione Europa USA, Inc.*, 618 F.3d 417, 438 (4th Cir. 2010) (citation omitted). "Likelihood of confusion is synonymous with 'probable confusion – it is not sufficient if confusion is merely 'possible.'" 4 *McCarthy on Trademarks and Unfair Competition* § 23:3 (5th ed.).

The Fourth Circuit has held that that "evidence of actual confusion is 'often paramount' in the likelihood of confusion analysis." *George & Co., LLC v. Imagination Entertainment Ltd.*, 575 F.3d 383, 393 (4th Cir. 2009) (citations omitted)). Hadron offers no evidence of actual confusion by the contracting officer in awarding the ACES-OE SOW task order contract to ParGov. To the contrary, Col. Herslow understood the difference between Hadron's products (Praxis™ and Photon™) and Oblong's product (Mezzanine). LUMF ¶¶ 31, 34, 47. He understood the difference between Hadron and AAI. *Id.* A2I's goal was to compare and contrast both technologies. LUMF ¶ 31. To accomplish that goal, A2I awarded Hadron a separate Phase III SIBR contract to deliver an ACES operating environment using Photon™ and Praxis™. *Id.* at ¶¶ 31, 34. It defies all logic for the government to contract with two different parties for delivery of the same thing.

The Fourth Circuit has also held "the sophistication and expertise of the usual purchasers can preclude any likelihood of confusion among them stemming from the similarity of trade

names." *Perini v. Perini Constr., Inc.*, 915 F.2d 121, 127 (4th Cir. 1990). Indeed, "[t]he relative

sophistication of the market may trump the presence or absence of any factor." *Sara Lee Corp. v.*

*Kayser-Roth Corp.,* 81 F.3d 455, 467 (4th Cir. 1996). The  Fourth Circuit's reasoning applies with

heightened force in this case.

The relevant market at issue in this case consists of a single, highly sophisticated purchaser

– the A2I office. Not only is the A2I a sophisticated purchaser, but it makes purchasing decisions

based on detailed requirements and proposals. The decision maker, Col. Herslow, had detailed

knowledge of the companies involved and their capabilities. Col. Herslow knew that Praxis™ and

Photon™ were Hadron products and that AAI did not offer those products, but instead provided

system integration services. He knew that Hadron delivered an ACES operating system employing

its technology at a separate facility from the AAI lab.  LUMF ¶¶ 34, 49.  ("It's clear to me that in

a separate office in Roslyn, Hadron did develop -- deliver a system that included Photon™."").

Herslow also knew that the only contract AAI had with A2I was the ACES-OE SOW, and that

AAI delivered and ACES operating system that did not use Photon™ but instead utilized

Mezzanine.  LUMF ¶ 47. These undisputed facts defeat any claim of confusion. *See Valador, Inc.*,

241 F. Supp. 3d at 670 (no confusion when "plaintiff's relevant market includes especially

sophisticated consumers, namely NASA and the Department of Veterans Affairs, that make

purchasing decisions based on detailed proposals and thorough bidding processes"). Accordingly,

Hadron's reverse passing-off claim fails with respect to AAI's responses to the ACES-OE SOW.

### 3.    Hadron's Demonstrations and the TEG Monthly Reports Are Not Actionable Under the Lanham Act

The Amended Complaint also grounds the reverse-passing off claim on demonstrations

that occurred in the AAI lab. ECF No. 59 at ⌐ 124. But Hadron's corporate witness testified Hadron

had no evidence that AAI demonstrated as its own a service or the delivery of an ACES-OE that

-16-

originated with Hadron.  LUMF ⁋ 41.  Hadron's admission establishes that there is no evidence that AAI passed-off Hadron's goods or services as its own to the government.

Finally, Hadron cites monthly reports that were prepared by TEG, in which TEG described its efforts supporting both AAI (under the ACES-OE SOW contract) and Hadron (under the Phase III SBIR contract) in a single report. ECF No. 59 at ⁋ 124. As TEG explained, however, this is because the report "rolls up to the one responsible agent for all of this work, which is the government. So no matter who you are and what contract you're on, you owe the government the activity for the work that's being done. So we are articulating in these reports the work that's being done."  LUMF ¶ 44.

Nothing about TEG's reports supports a claim for reverse-passing off because AAI was not "selling the plaintiff's goods and passing them off as originating with the defendant.'" *Belmora LLC*, 819 F.3d at 709 n.7 (citations omitted). Moreover, Col. Herslow testified that he was aware that TEG's reports included TEG's efforts in support of both the ParGov/AAI contract and Hadron's Phase III SBIR contract.  LUMF ¶ 45. Given that Hadron's Phase III SBIR contract included installations of systems at government locations, it strains credulity that the Government would be confused about who was delivering its systems. Indeed, it is for that reason that there is no evidence of any Government confusion. To the contrary, Col. Herslow understood that AAI delivered an ACES operating environment using Oblong's Mezzanine technology under the ACES-OE SOW, and Hadron delivered one utilizing its technology under the SIBR III contract. LUMF ¶¶ 47, 49.

Accordingly, this Court should dismiss Count II of the Complaint because Hadron cannot prove the essential element of its reverse passing-off claim – that AAI misrepresented Hadron's

goods and services as its own in commercial advertising and that the sophisticated purchaser, in this case, the A2I office, was likely to be confused by AAI's statements.

### B.      AAI is Entitled to Summary Judgment on Hadron's False Advertising Claim

Section 43(a) provides a civil cause of action against a person who misrepresents the "nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities" in a "commercial advertising or promotion." 15 U.S.C. § 1125(a)(1)(B). To prove its claim, Hadron must prove: (a) AAI made a false or misleading description of fact or representation of fact in a commercial advertisement about its own or another's product; (b) the misrepresentation is material, in that it is likely to influence the purchasing decision; (c) the misrepresentation actually deceived or has the tendency to deceive a substantial segment of its audience; (d) AAI placed the false or misleading statement in interstate commerce; and (e) Hadron was or is likely to be injured as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its products. *Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 272 (4th Cir. 2002). For the same reasons described above, Hadron's false advertising claim fails as a matter of law.

*First*, AAI's responses to the ACES-OE SOW did not constitute "commercial advertising or promotion" under the Lanham Act. *See Kratos Def. Eng'g Solutions, Inc. v. NES Assocs., LLC*, No. 10-cv-1452, 2011 WL 13248293, at *7 (E.D. Va. March 23, 2011) (defendant's proposal to the government's RFQ "was not sufficiently widely circulated to the relevant purchasing public to constitute 'commercial advertising or promotion'").

*Second*, as established above, AAI did not make a false statement in the responses to the ACES-OE SOW that it submitted to ParGov.

-18-

*Third*, Hadron cannot meet its burden to show that A2I, the highly sophisticated purchaser of AAI's and Hadron's services, was likely to be confused by the ParGov response to the ACES-OE SOW.

*Finally*, the demonstrations and monthly reports provided during the performance of the ACES-OE SOW plainly are not commercial advertising or promotion, but instead are performance requirements under the ACES-OE SOW, and therefore, are not actionable under § 43(a)(1)(B) of the Lanham Act.

Accordingly, this Court should grant AAI summary judgment and dismiss Count IV of the Amended Complaint.

## II.   AAI is Entitled to Summary Judgment on the Tortious Interference with Business Relations and Prospective Advantage Claim (Count II)

In Count II, Hadron alleges that AAI tortiously interfered with its business expectancy by obtaining the ACES-OE SOW contract, which ultimately was awarded to ParGov as the prime contractor and AAI as ParGov's subcontractor. ECF No. 59 at ¶¶ 115-121. Hadron's tortious interference claim fails because: (1) it is barred by the statute of limitations; and (2) Hadron has no evidence that AAI obtained the SOW contract by improper means.

### A.   Hadron's Tortious Interference Claim is Barred by the Statute of Limitations

Massachusetts "applies a 'functional approach' to choice of law questions concerning statutes of limitations as stated in the Restatement (Second) of Conflict of Laws § 142." *In re Fresenius Granuflo/NaturalLyte Dialysate Products Liability Lit.,* 76 F. Supp. 3d 294, 305 (D. Mass. 2015) (quoting *Nierman v. Hyatt Corp.*, 808 N.E.2d 290, 292 n.7 (Mass. 2004)).[3] Under

---

[3]   A court receiving a 1404(a) transfer must apply the choice-of-law principles from the transferor court. *Yancey v. Int'l Fid. Ins. Co.*, No. 1:16-cv-0057, 2016 WL 2997375, at *8 n.17 (E.D. Va. May 25, 2016) (Cacheris, J.). Here, because the case was originally filed in the Massachusetts federal district court, AAI is applying that forum's choice-of-law principles.

that approach, "a Massachusetts court 'generally will apply its own statute of limitations to permit a claim unless: (a) maintenance of the claim would serve no substantial interest of the forum; and (b) the claim would be barred under the statute of limitations of a state having a more significant relationship to the parties and the occurrence.'" *Id.* (quoting *Nierman*, 808 N.E .2d at 292).

Three state statute of limitations potentially apply to Hadron's tortious interference claim: (1) New Hampshire, the place of Hadron's principal place of business in 2014; (2) Virginia, where the actions giving rise to the alleged claim occurred; and (3) Massachusetts, the forum court.  Both New Hampshire and Massachusetts have a three year statute of limitations that may be tolled until discovery of the alleged cause of action. *See Kusek v. Family Circle, Inc.*, 894 F. Supp. 522, 530 (D. Mass. 1995); *Sheeler v. Select Energy and NEChoice, LLC*, No. 03-59, 2003 WL 21735496, *4 (D. N.H. July 28, 2003). Virginia, which does not have a discovery rule, has a two year statute of limitations. Va. Code § 8.01-243(A). Accordingly, if Hadron's tortious interference claim is barred under Massachusetts law, then this Court need not determine whether Virginia or New Hampshire has a more significant relationship to the parties or occurrences.

The statute of limitations has run on Hadron's claim unless it can meet its burden to establish a basis for tolling the statute of limitations.  *Harrington v. Costello*, 7 N.E.3d 449, 454 (Mass. 2014) (plaintiff has burden of establishing facts that take it outside the three-year limitations period); accord *Glines v. Bruk*, 664 A.2d 79, 80 (W.H. 1995).  Plaintiff cannot meet its burden in this case.

The undisputed facts establish that, by early July, 2014, Hadron learned that A2I had selected the ParGov/AAI team for the ACES-OE SOW.  LUMF ⁋⁋ 29, 32. Hadron received a copy of the Government's ACES-OE SOW, as well as ParGov's response on or about September 24, 2014. *Id.* at ⁋ 32.  Receipt of the ACES-OE-SOW award by the government caused Hadron to

-20-

"become gravely concerned" that the government "had been misled." *Id.* As such, by September 2014, at the latest, Hadron had notice that it was harmed by not obtaining the ACES-OE SOW task order award, which had been awarded to ParGov/AAI, and Hadron was on notice as to the cause of the alleged harm. *See Abdallah v. Bain Capital,* LLC, 880 F. Supp. 2d 190, 195 (D. Mass. 2012) (statute starts to run when an event or events have occurred that were reasonably likely to put the plaintiff on notice that someone may have caused her injury). According, the three-year statute of limitations ran no later than September 2017, which is more than six months before the complaint was filed in April 2018.

### B.   Hadron Has No Evidence That AAI had Improper Motive or Used Means in Obtaining the ACES-OE SOW

AAI is also entitled to summary judgment because there is no evidence that AAI had improper motive or used means to obtain the ACES-OE SOW contract.

To establish a claim for tortious interference with an advantageous business relationship under Massachusetts law,[4] Hadron must show, among other elements, that AAI intentionally interfered with Hadron's purported prospective business relationship with the Government and that the interference "in addition to being intentional, was improper in motive or means." *Hamann v. Carpenter*, 937 F.3d 86, 93 (1st Cir. 2019) (citation omitted). The undisputed evidence here establishes that ParGov asked AAI to provide a response and the Government accepted the ParGov/AAI response to the ACE-OE SOW, because its goal was to compare an ACES operating environment utilizing Mezzanine with one utilizing Hadron's Photon™ and Praxis™ technologies. LUMF ¶ 31.

---

[4]      Hadron has previously argued that Massachusetts law applies to this cause of action. *See* ECF No. 71 at 25.  Because the law is clear that AAI is entitled to summary judgment even under the Massachusetts law that Hadron is urging the Court to apply, it is not necessary for the Court to conduct a choice of law analysis to decide AAI's Motion for Summary Judgment.

-21-

Hadron alleges that AAI obtained the ACES-OE SOW contract "based on the misrepresentation that Defendants would be working with Hadron and would use Hadron's software." ECF No. 59 at ⁋ 117. During discovery, however, Hadron admitted that AAI's responses to ParGov *did not* represent that AAI would be working with Hadron or using Hadron's software. LUMF ⁋ 26. Furthermore, there is no evidence that AAI said or did anything improper to the Government that caused it to issue the ACES-OE SOW to AAI.

At bottom, then, Hadron's claim is that it believed it was going to receive the work contemplated by the ACES-OE SOW, but AAI instead obtained that work. However, "hard bargaining and lawful competition generally do not amount to impermissible interference under Massachusetts law." *Hamann*, 937 F.3d at 91 (multiple citations omitted). Because there is no evidence that AAI engaged in any improper means in obtaining the ACES-OE SOW, AAI is entitled to summary judgment on Count II for this additional reason.

## III.   AAI is Entitled to Summary Judgment on Hadron's Conspiracy Claim (Count V)

In Count V, Hadron alleges that AAI and the codefendants "knowingly combined and provided substantial assistance to one another to a common plan of improperly and unfairly competing with Hadron and unscrupulously interfering and absconding with Hadron's contracts, business relationships, and opportunities." ECF No. 59 at ⁋ 142. AAI is entitled to summary judgment on this claim because: (1) it is time-barred; and (2) there is no evidence of any conspiracy.

### A.   Hadron's Conspiracy Claim is Barred by the Statute of Limitations

Under Massachusetts law, a claim for civil conspiracy is "subject to the three-year limitations period for actions based on personal injuries" *Pagliuca v. Boston*, 35 Mass. App. Ct.

820, 823 (1994); *see also* G.L. c.260, § 2A.[5] Here, Hadron testified that the alleged conspiracy was reached "[s]ometime between the acquisition or merger of GTSI with AAI and the award of the task order," which occurred in early August, 2014.  Exh. 4 at 218:6-10.  Hadron obtained the Government's May 20, 2014 SOW and the ParGov/AAI response in September 2014. LUMF ¶ 32.  Hadron was plainly on notice of its potential claim as of September 2014. *Abdallah*, 880 F. Supp. 2d at 195-96. As such, Hadron's conspiracy claim, which was not first asserted until April 27, 2018, was filed beyond the three-year statute of limitations and is time-barred.

### B.      Hadron Has No Evidence of a Conspiracy

Under Massachusetts law, a claim for conspiracy "requires an underlying tort [and] . . . [t]he conspiracy consists in agreeing to, or assisting in, this underlying tort." *Taylor v. Am. Chemistry Council*, 576 F.3d 16, 35 (1st Cir. 2009) (citations omitted). A plaintiff must show that defendants either (1) acted "in concert with or pursuant to a common design with" the tortfeasor or (2) "gave substantial assistance to" the tortfeasor's conduct. *Kyte v. Philip Morris Inc.*, 556 N.E.2d 1025, 1027 (Mass. 1990).[6]

Under the "common design" theory, a plaintiff must show "first, a common design or an agreement, although not necessarily express, between two or more persons to do a wrongful act and, second, proof of some tortious act in furtherance of the agreement." *Aetna Cas. Sur. Co. v. P&B Autobody*, 43 F.3d 1546, 1564 (1st Cir. 1994). By contrast, under the "substantial

---

[5]      For the same reasons discussed above in connection with the tortious interference claim, the Massachusetts statute of limitations for conspiracy applies to this claim.

[6]      The elements of a conspiracy claim under Virginia and New Hampshire law is not materially different.  *See Jay Edwards, Inc. v. Baker*, 534 A.2d 206, 709 (N.H. 1987) and *L-3 Communications Corp. v. Serco, Inc.*, 926 F.3d 85, 92 (4th Cir. 2019) ("To recover in a civil conspiracy action under the common law . . . a plaintiff must establish that at least one member of the conspiracy, in an agreement with another member, committed an act that was itself wrongful or tortious, and that such act damaged the plaintiff.").

assistance" theory, "a person may be liable in tort if he 'knows that the . . . conduct [of another person] constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself.'" *Kurker v. Hill,* 689 N.E.2d 833, 837 (Mass. App. 1998) (citations omitted). "Key to this cause of action is a defendant's substantial assistance, [given] with the knowledge that such assistance is contributing to a common tortious plan." *Id.* Moreover, liability under this theory only applies to "assistance or encouragement that is a 'substantial factor in causing the resulting tort.'" *Taylor*, 576 F.3d at 35 (citation omitted).

Additionally, the plaintiff must establish that the defendant had an "unlawful intent," consisting of both "knowledge that the other's conduct is tortious[ ] and an intent to substantially assist or encourage that conduct." *Id*. Merely showing the defendant's "general awareness" that their ostensible co-conspirator is engaged in tortious acts is insufficient. *Kyte*, 556 N.E.2d at 1028.

Hadron has no evidence to support its conspiracy claims against AAI. As shown above, Hadron cannot establish an underlying tort.  While the Amended Complaint alleged that the defendants used "Hadron's proprietary technology and information and misappropriated it for their combined benefit by using the information to unlawfully and deceptively compete with Hadron in the federal contract award process," ECF No. 59 at ¶ 143, Hadron has no evidence to back up its claim.

Moreover, Hadron has no facts establishing that TEG committed a tort and that AAI acted in concert with TEG in the commission of that tort, or that AAI gave substantial assistance to TEG in the commission of the tort. For these reasons, AAI is entitled to summary judgment.

**IV.    AAI is Entitled to Summary Judgment on Hadron's Chapter 93A Claim against AAI**

In Count I, Hadron asserts claims for violations of §§ 2 and 11 of Massachusetts General Laws ch. 93A, which is a codification of Massachusetts Consumer Protection Act. Section two

declares as unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." M.G.L. ch. 93A, § 2.  Section 11 provides "a 'private cause of action to a person who is engaged in business and who suffers a loss as a result of an unfair or deceptive act or practice by another person also engaged in business.'" *Paradigm BioDevices, Inc. v. Viscogliosi Bros., LLC*, 842 F. Supp. 2d 661, 668 (S.D.N.Y. 2012) (citing *Manning v. Zuckerman*, 444 N.E.2d 1262, 1264 (Mass. 1983); M.G.L. ch. 93A, § 11.

Hadron's Chapter 93A claim fails for at least three reasons. *First*, Massachusetts substantive law does not apply to this cause of action. *Second,* the alleged conduct giving rise to the claim did not occur primarily and substantially in Massachusetts, as required for a viable claim. *Third,* AAI's conduct was not unlawful or deceptive, and thus, did not violate Chapter 93A.

### A.     Massachusetts Law Does Not Apply to This Claim

Under the choice-of-law principles applicable to a case filed in the Massachusetts federal district court, "the choice-of-law analysis for Chapter 93A claims centers on whether the claim is analogous to a tort or contract claim and whether the actionable conduct took place 'primarily and substantially' in Massachusetts." *In re GlassHouse Technologies, Inc.*, 604 B.R. 600, 619 n.8 (D. Mass. 2019) (multiple citations omitted). Here, Hadron premises its Chapter 93A claim on AAI's alleged violations of the Lanham Act and tortious interference with the ACES-OE SOW. Accordingly, the claim is most analogous to a tort claim and, as a result, it is only viable if Massachusetts tort choice of law principles lead to application of Massachusetts law.

Under Massachusetts law, "'tort claims are governed by the law of the state where the alleged injury occurred, unless another state has a more significant relationship to the cause of action.'" *In re GlassHouse Technologies, Inc.*, 604 B.R. at 618 (citations omitted). "'The place

where the injury occurred is the place where the last event necessary to make an actor liable for an alleged tort takes place.'" *Id.* (citation omitted).

Those factors demonstrate that Massachusetts law does not apply here. The alleged wrongful conduct – *i.e.,* alleged misrepresentations by AAI in its responses to the ACES-OE SOW – occurred in Georgia, where Greenberg was based, or Maryland, where AAI is based. LUMF ¶¶ 1, 10.  Any improper conduct during the AAI's performance of the ACES-OE SOW task order occurred in the AAI lab in Rosslyn, Virginia. *Id.* at ¶ 36. Any monthly reports were submitted by AAI from Maryland or Virginia to ParGov in New York, and then to Herslow at the Pentagon in Virginia. *Id.* at ¶ 19.  Finally, any "injury" was suffered by Hadron in New Hampshire because that was its state of incorporation and where it repeatedly represented was its principal place of business in 2014-2015. *Id.* at ¶ 9.

"'Massachusetts courts sometimes also consider the place where the injury occurred, the place where the conduct causing the injury occurred, the domicil, residence, nationality, place of incorporation and place of business of the parties, and the place where the relationship, if any, between the parties is centered.'" *Knox for Knox v. Vanguard Group, Inc.*, No. 15-13411, 2018 WL 315157, at *15 (D. Mass. Jan. 5, 2018) (citation omitted). Each of those factors points away from application of Massachusetts law:

- The place of Hadron's alleged injury is New Hampshire because, in 2014-15 when AAI engaged in the conduct that allegedly gives rise to Hadron's Chapter 93A claim, Hadron was a New Hampshire corporation with its principal place of business in New Hampshire.  LUMF ¶ 9.

- The place where the conduct allegedly causing the injury occurred is Maryland and Georgia where AAI formulated its ACES proposal, or Virginia where AAI conducted its work under the ACES-OW contract. *Id.* at ¶¶ 1, 10, 36.

- The domicile, residence, nationality, place of incorporation and place of business of the parties do not favor Massachusetts. In 2014-15, Hadron was a New Hampshire corporation with its principal place of business in New Hampshire. *Id.* at ¶ 9.  On the

other hand, AAI is a Delaware corporation with its principal place of business in Maryland. *Id.* at ¶ 10.

- Finally, there is no relationship between AAI and Hadron. Other than a single visit to Cambridge, Massachusetts by Greenberg in February 2014, there are no other significant connections to Massachusetts that would impact this case at all.

Because Chapter 93A "creates . . . a cause of action which is not recognized in Virginia" *Corinthian Mortg. Corp. v. Choicepoint Precision Marketing, LLC*, 543 F. Supp. 2d 497, 502 (E.D. Va. 2008) and because Massachusetts law does not apply to this tort claim, AAI is entitled to summary judgment on count one.

**B.   The Allegedly Unfair and Deceptive Conduct Did Not Occur "primarily and substantially" in Massachusetts**

AAI is also entitled to summary judgment because, to be viable, the allegedly unfair or deceptive acts underlying the Chapter 93A must occur "*primarily and substantially*" within Massachusetts, which plainly is not the case here.  M.G.L.A. ch. 93A § 11. The inquiry's focus is "more on the location of the wrongful conduct than on the location where the plaintiff suffered injury." *Hipsaver Co., Inc. v. J.T. Posey Co.*, 490 F. Supp. 2d 55, 71 (D. Mass. 2007); *Corinthian Mortgage Corp.*, 543 F. Supp. 2d at 501-02. The court "focuses solely on the actionable conduct said to give rise to the violation; other conduct, no matter where it takes place, may not be considered on the question." *Spring Investor Services, Inc. v. Carrington Capital Mgt.*, No. 10-cv-10166, 2013 WL 1703890, at *12 (D. Mass. April 18, 2013) (citation omitted).

The undisputed facts establish that AAI's conduct at issue in this case did not take place in Massachusetts. AAI drafted the response to the ACES-OE SOW in Georgia and Maryland and submitted it to ParGov in New York.  LUMF ¶¶ 1, 10, 36.  AAI performed the ACES-OE SOW task order in Virginia, demonstrated its performance in Virginia and communicated its monthly reports to A2I at the Pentagon from Virginia or Maryland. *Id.* at ¶ 36.

None of the allegedly deceptive conduct upon which the Chapter 93A claim is based occurred in Massachusetts. On a similar record, the Fourth Circuit recently rejected Chapter 93A claims. *See Evans v. PlusOne Sports, LLC*, 686 Fed. Appx. 198 (4th Cir. 2017). This Court should do the same, and grant AAI summary judgment and dismiss the Chapter 93A claim here.

### C.    The Undisputed Facts Establish AAI Did Not Engage in Unfair Competition or Deceptive Act or Practice

Hadron's Chapter 93A, § 11 claim fails against AAI as a matter of law because it has no evidence that AAI "engaged in an unfair method of competition or committed an unfair or deceptive act or practice" as defined by Chapter 93A. "'[T]he boundaries of what may qualify for consideration as a [Chapter] 93A violation is a question of law.'" *Tomasella v Nestlé USA, Inc.*, 364 F. Supp. 3d 26, 32 (D. Mass. 2019) (citation omitted). Under Chapter 93A, the courts perform a "'legal gate-keeping function'" to determine whether the conduct may be actionable under the act. *Id.* at 36 (citation omitted).

Hadron asserts two types of unfair practices as the basis of its claim against AAI – unfair competition based on violations of the Lanham Act, and tortious interference with business relations and prospective advantage. ECF 59 at ¶¶ 112-113. While Hadron also asserts that "Defendants," meaning AAI and TEG, misappropriated Hadron's technology, that allegations has proven to be groundless. Because Hadron's Chapter 93A claim against AAI is wholly derivative of its groundless tort claims, this Court should grant AAI summary judgment and dismiss this claim as well. *See Pembroke Country Club, Inc. v. Regency Savings Bank, F.S.B.*, 815 N.E.2d 241, 247 (Mass. Ct. App. 2004) (where Chapter 93A claim is "wholly derivative of the" plaintiff's tort claims, and the evidence is insufficient to establish those tort claims, then it is "likewise insufficient to establish an unfair method of competition or unfair or deceptive act or practice").

-28-

Regardless, simply proving a violation of a statutory regime is neither necessary nor sufficient for Hadron to succeed on its Chapter 93A claim for alleged unfair competition. *Massachusetts Eye and Ear Infirmary v. QLT Phototherapeutics, Inc.*, 552 F.3d 47, 69 (1st Cir. 2009) (citation omitted). "The lodestar of Chapter 93A claims is whether the defendant's actions 'would raise an eyebrow of someone inured to the rough and tumble of the world of commerce.'" *Malden Transp., Inc. v. Uber Technologies, Inc.*, 286 F. Supp. 3d 264, 273 (D. Mass. 2017). That is, "[f]or conduct to be actionable under Chapter 93A, 'it must rise to the level of an extreme or egregious business wrong.'" *River Farm Realty Trust v. Farm Family Cas. Ins. Co.*, 360 F. Supp. 3d 31, 40 (D. Mass. 2019) (citation omitted). "In deciding whether the conduct is 'unfair' or 'deceptive' under the statute, the . . . focus of the inquiry should be on 'the nature of the challenged conduct and on the purpose and effect of that conduct,' and on whether the conduct 'had a coercive quality that, with the other facts, warranted a finding of unfair acts or practices.'" *Id.* at 40-41 (citation omitted).

Here, discovery has confirmed that none of AAI's conduct was "unfair" or "deceptive" such that it rises "to the level of an extreme or egregious business wrong." At most, the evidence shows that, while Hadron believed work under the ACES-OE SOW contract was going to be awarded to Hadron, that work was instead awarded to AAI. This is not deceptive or unfair conduct sufficient to support a claim under Chapter 93A.

## CONCLUSION

For the foregoing reasons, AAI is entitled to summary judgment on all counts asserted by Hadron (Counts 1-5).

Dated: January 31, 2020     Respectfully submitted,

*/s/Charles M. Sims*
Charles M. Sims (VSB No. 35845)
Rachael L. Loughlin (VSB No. 84133)
O'HAGAN MEYER, PLLC
411 E. Franklin Street, Suite 500
Richmond, VA 23219
(804) 403-7114 (phone)
(804) 403-7110 (facsimile)
csims@ohaganmeyer.com
rloughling@ohagameyer.com

Leslie Paul Machado (VSB No. 94124)
O'HAGAN MEYER, PLLC
2560 Huntington Avenue, Suite 204
Alexandria, Virginia 22303
(703) 775-8607 (phone)
(804) 403-7110 (facsimile)
lmachado@ohaganmeyer.com

**Attorneys for ALQIMI Analytics &
Intelligence, LLC**

**CERTIFICATE OF SERVICE**

I hereby certify that, on this 31st day of January, 2020, a true and correct copy of the

foregoing was filed with the Court via the CM/ECF system, which will serve it upon on all

counsel of record

*/s/ Charles M. Sims*
Charles M. Sims (VSB No. 35845)
O'HAGAN MEYER, PLLC
411 E. Franklin Street, Suite 500
Richmond, VA 23219
(804) 403-7114 (phone)
(804) 403-7110 (facsimile)
csims@ohaganmeyer.com